UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


**ESTATE OF RICHARD H. HAGGERTY, ET AL.**                              **PLAINTIFFS**

**V.**                                                  **CIVIL ACTION NO.1:07CV915 LTS-RHW**

**ALLSTATE INSURANCE COMPANY, ET AL.**                              **DEFENDANTS**


## MEMORANDUM OPINION

The Court has before it Defendant Stephen R. Hart's (Hart) Motion [52] for Summary Judgment. For the reasons set out below, this motion will be granted in part and denied in part.

This is an action for negligence against Allstate Insurance Company (Allstate) and two local insurance agents, Robert Dean (Dean) and Hart. Plaintiffs allege that at all relevant times Dean and Hart were acting serially as the agents of Allstate. (Complaint Paragraphs 3 and 4) Plaintiffs allege that Dean and Hart negligently handled the property insurance coverages for their residence and that as a result of that negligence the plaintiffs were severely under-insured for wind and flood damage when Hurricane Katrina destroyed their home on August 29, 2005.

At the time of the storm, Plaintiff Beverly Haggerty and her late husband, Richard, (the Haggertys) owned a residence at 2006 I West Beach Boulevard, Long Beach, Mississippi. Their home was insured under three insurance policies, purchased in 1999 through the local agency then owned by Hart: 1) an Allstate homeowners policy (policy number 095702114); 2) a policy purchased through the Mississippi Windstorm Underwriting Association (Wind Pool) (policy number CPD 077498005); and 3) a Standard Flood Insurance Policy (SFIP) (policy number 1-80-194109-5) issued through Allstate.

The Allstate homeowners policy excluded the hazards of both flood and windstorm. The Wind Pool policy covered only the risk of windstorm. The SFIP covered only the risk of flood. The plaintiffs have alleged that Hart was negligent in failing to prevent a reduction in their original SFIP coverage when that policy was renewed in late 2003. The plaintiffs allege that Dean was negligent in failing to carry out their request for an increase in the amount of coverage under their Wind Pool policy in late 2004. Plaintiffs' claim under the Allstate homeowners policy is for certain additional living expenses the Haggertys incurred after their home was damaged in the storm.

Hart originally sold the plaintiffs the following amounts of coverage in 1999:

| | |
|---|---|
| Allstate Homeowners Policy | $213,000 Dwelling |
| | 21,300 Other Buildings |
| | 159,750 Contents |
| Wind Pool Policy | $171,000 Dwelling |
| | 100,000 Contents |
| SFIP | $171,000 Dwelling |
| | 100,000 Contents |

These policies were renewed annually through policy year 2002 - 2003.  Hart sold his agency to Dean in January 2004.  For the Haggertys' coverages, this sale occurred during the policy year 2003 - 2004.  The acts of negligence the plaintiffs allege straddled the date the agency changed hands.

In 2001, the Haggertys refinanced their home with Countrywide Financial Corporation (Countrywide) and secured their loan with a deed of trust.  Countrywide allegedly paid insurance premiums and taxes on this property through an escrow account maintained for that purpose.

The three policies were in force in the amounts stated above up to and including the policy year 2002 -2003.  There were no apparent problems in the arrangement with Countrywide until late 2003 when the SFIP was scheduled for renewal.  No party has offered a copy of any of the policies or the declarations pages into the record, so it is impossible to determine the exact dates of effective coverage under these three policies.  I can infer, however, that at least the SFIP and probably both the other policies were scheduled to be renewed in late 2003 for the policy year 2003-2004.  The Haggertys' homeowners policy and their Wind Pool policy were apparently renewed with no change in coverage, and none of the Haggertys' complaints have to do with these two coverages for policy year 2003 - 2004.  The first of the two issues the Haggertys raise in their complaint concerns the renewal of their SFIP and a reduction in the coverage limits under their SFIP for the 2003-2004 policy year.

### The 2003 Reduction in Flood Insurance Coverage under the SFIP

On or about October 21, 2003, Allstate sent the Haggertys a "Notice of Additional Premium Due" for their SFIP.  This notice stated that an additional premium of $413 was due, identifying the SFIP by policy number.  The notice stated that the additional premium was due by November 20, 2003, and instructed the recipient to detach the bottom part of the notice and return it with the payment due.  Countrywide apparently paid part but not all of the premium necessary to keep the original limits of SFIP coverage in effect for policy year 2003-2004.  The Haggertys took no action in response to this first notice from Allstate.

On or about November 20, 2003, Allstate sent the Haggertys a "Notice of Coverage Reduction." This second notice stated that the additional premium referenced in the notice of October 21, 2003, had not been paid and that "the policy coverages have been reduced to an amount to match the submitted premium." Again, the SFIP was identified by policy number.

Hart has supplied the Court with copies of these two notices as exhibits to his motion for summary judgment, and in the deposition testimony of Mrs. Haggerty, there is some discussion (at pages 52 - 54) of these documents, but I cannot be sure that these two documents are the only documents being referred to during the deposition. The documents that were being discussed were made exhibits to the deposition, but the deposition exhibits were not included in the copy of the deposition Hart filed in support of his current motion. For the purpose of resolving this motion, I will assume that there are only these two notices and that these are the documents referred to in Mrs. Haggerty's deposition testimony.

Mrs. Haggerty admits she received the October notice, but she denies receiving the second notice sent in November 2003. Mrs. Haggerty testified that Countrywide and not the Haggertys paid the insurance premiums for all three policies and that it was her understanding that Countrywide paid the insurance premiums in installments. The Haggertys therefore did nothing in response to this notice, assuming that Countrywide would pay the appropriate premium as and when it was due. It is not clear in the record before me whether Allstate also sent this October 21, 2003, notice to Countrywide, but copies were sent to the Hart agency. (Exhibit Two to Plaintiffs' Response [55] to Hart's Motion for Summary Judgment) Neither the Haggertys nor Hart took any action in response to the October notice, and, if Countrywide received a copy of this notice, it took no action. The November notice stated the amount of the reduction in coverage and the reasons the reduction was being made. A copy of this notice also went to the Hart agency. (Exhibit One to Plaintiffs' Response [55] to Hart's Motion for Summary Judgment) Neither the Haggertys nor Hart took any action in response to the November notice of the reduction in SFIP coverage, and, if Countrywide received a copy of this notice, it took no action.

The only indication in the record concerning the reason Countrywide did not pay the premium necessary to maintain the original SFIP limits is Mrs. Haggerty's deposition testimony. This testimony is purely hearsay to the effect that a representative of the Hart agency (identified only as "Theresa") misquoted the SFIP premium to Countrywide and asked that Countrywide send the flood insurance premium directly to the agency. Countrywide was unwilling to send the premium to the agency, insisting instead on sending the premium directly to Allstate. The premium Countrywide sent to Allstate (the amount supposedly quoted to Countrywide by Theresa) was insufficient to pay for the existing flood coverage. This ultimately led to the October notice concerning the underpayment of the premium for the SFIP and to the November reduction in the limits of flood coverage for the plaintiffs' property.

The SFIP building coverage was reduced from $171,000 to $30,500; the SFIP contents coverage was reduced from $44,400 to $10,200, in accordance with the November 20, 2003, notice.  Countrywide is not a party to this action.  The reduced SFIP limits were insufficient to cover the Haggertys indebtedness to Countrywide.  These reduced SFIP coverage limits took effect for policy year 2003 - 2004, and the same limits were in place for the policy year 2004 -2005 when the loss occurred.  After the storm, the reduced policy limits ($30,500 structure + $10,200 contents = $40,700) of the SFIP were paid.  The Haggertys contend that their original SFIP policy limits ($171,000 + $44,400 = $215,400) should have been in place and should have been paid for storm surge flooding damage during the storm.  Mrs. Haggerty testified that she and her husband did not receive a copy of the SFIP declarations page when the policy was renewed for the 2004-2005 policy year, and the Haggertys were therefore allegedly unaware of this reduction in SFIP coverage at the time of the storm, over a year and a half after the reduction was made.

### The 2004 Renewal of the Wind Pool Policy
### Without the Increases in Coverage Limits Plaintiffs Allegedly Requested

The second issue the Haggertys raise in their complaint relates to their windstorm coverage under the policy issued through the Wind Pool for policy year 2004 - 2005.  The Hart agency changed hands on January 1, 2004.  The plaintiffs were not aware that the agency had been sold and that Dean was their new agent.  The Haggertys have no complaint concerning their Wind Pool coverage before the policy year 2004 -2005, the policy year in which the storm occurred.

On or about September 12, 2004, the Haggertys received a notice of expiration and a renewal quotation for their Wind Pool policy.  The Haggertys allege that they wished to substantially increase the limits of their windstorm coverage under this policy to equal the policy limits under their Allstate homeowners policy.  To that end, the Haggertys allege they called their agent's office, spoke with Theresa, and asked for this increase in windstorm coverage.  The Haggertys were actually now calling Dean's office, but they were not yet aware of the change in the agency ownership.  According to the plaintiffs, Theresa instructed them to note their request for an increase in windstorm coverage on the "Changes/Corrections" section of the expiration and renewal notice they had received and then send the completed notice to the agency office.  This the plaintiffs allege they did.

On or about October 19, 2004, the Haggertys received a declarations page for the renewal of their Wind Pool policy.  This renewal document did not reflect the increase in coverage they allege they had requested through Theresa.  This declarations page also reflected the change in agent from Hart to Dean.  This change in the ownership of the agency was a surprise to the plaintiffs.  The Haggertys allege that they then called Dean's office and notified the agency that the increase in coverage they requested the previous month was not shown on their new declarations page.

According to the Haggertys, they did not receive renewal notices or declarations pages for their SFIP or for their homeowners policy in 2004 for the policy year 2004 - 2005.  Mrs. Haggerty testified that the plaintiffs requested that the agency send them copies of the declarations pages for their SFIP and their homeowners policy.  The plaintiffs contend that because their request for copies of their SFIP declarations was not honored they were unaware of the reduction in their SFIP limits made the previous year.  Plaintiffs assert that they thought their request for higher Wind Pool policy limits had been accepted and they thought their original SFIP coverage was still in force.

As far as this record is concerned, after the Haggertys' call to the agency requesting copies of their declarations pages for their SFIP and for their homeowners policies, no further actions were taken in the next ten months leading up to the storm on August 29, 2005.  The Haggertys were allegedly assuming that Dean secured the increase they requested for their windstorm coverage, and the Haggertys were also allegedly assuming that Countrywide had paid the premium necessary to maintain their original SFIP coverage limits.  After the storm the plaintiffs learned that their SFIP limits had been reduced and that their windstorm limits had not been increased.  The Haggertys filed this lawsuit alleging that the negligence of the defendants Hart and Dean led to these lower limits of coverage being in effect.

### Hart's Motion for Summary Judgment

Hart contends that he is entitled to summary judgment on the grounds that these coverage issues arose after he sold his agency to Dean on January 1, 2004.  Plaintiffs assert that the coverage problems arose in late 2003 when Hart still owned the agency.  The parties are both correct.  The issues concerning the amount of coverage under the SFIP arose in late 2003 when Hart still owned the agency.  The issues concerning the amount of coverage under the Wind Pool policy arose in late 2004 when Dean owned the agency.  These two issues must be considered separately to decide the merits of Hart's motion for summary judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party, in this case Hart, demonstrates that he is entitled to judgment as a matter of law. F.R.Civ.P. 56.  The burden of establishing a right to summary judgment is on the moving party.  *Dailey v. Johnson & Johnson Consumer Products, Inc.*, 850 F.Supp. 549 (N.D.Tex.1994).

In support of his motion, Hart has submitted his affidavit stating essentially that he was the Haggertys' insurance agent from 1999 until January 1, 2004, and that he has had no contact with the Haggertys since he sold his agency to Dean.  Hart's affidavit does not address any of the material allegations of the complaint regarding the reduction of SFIP coverage in late 2003.  Hart submitted no affidavit from Theresa, who appears to have been an active participant in the events alleged in the complaint.  At the time of this reduction in SFIP coverage the Haggertys were doing business with Hart's agency, and that business relationship had been established for four years.

With regard to the reduction of coverage under the Haggertys' SFIP, Hart is not entitled to summary judgment. The statute of limitations for a claim that an agent negligently failed to procure requested coverages is three years. This period of limitations begins to run when a claim is denied. *Oaks v. Sellers*, 953 So.2d 1077 (Miss.2007). Where the plaintiffs' allegation concerns an agent's misrepresentation of coverage, the statute of limitiations begins to run at the time the alleged misrepresentation is made. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419 (5th Cir. 2007). Thus the Haggertys' claim against Hart for negligently allowing a reduction in SFIP coverage did not accrue until the Haggertys' claim for the original SFIP benefits was denied after the storm. Less than three years elapsed between the denial of the Haggertys' claim for their original SFIP limits and the filing of this suit.

The Haggertys' claim against Hart is based on allegations of negligence. *McKinnon v. Battle*, 485 So.2d 295 (Miss.Ct.App.1986). The Haggertys contend that they relied on Countrywide to pay the correct premium for their SFIP policy and that they relied on Hart to work with Countrywide and their insurers to assure that premiums for their coverages were accurately quoted and timely paid.

The standard of reasonable care applies to all of the parties involved in this transaction: the Haggertys, Hart acting through his agency employees, Allstate, and Countrywide. There is sufficient evidence in the record at this point to support a finding that the Haggertys were negligent in their responses to the notices they received from Allstate in October (and perhaps in November) 2003 and to support a finding that the Haggertys' negligence contributed to cause the reduction in their SFIP coverage for policy years 2003 - 2004 and 2004 - 2005. But the evidence in the record is not sufficient to establish, as a matter of law, that the Haggertys' negligence was the sole proximate cause of this reduction in SFIP coverage. Accepting the deposition testimony of Mrs. Haggerty as true, as I must in the context of a motion for summary judgment, I find that there are genuine issues of material fact with respect to the potential liability of Hart for negligence that may also have contributed to the reduction in the Haggertys' SFIP coverage.

When the Haggertys received the October notice from Allstate, they were on notice that there was a problem with their SFIP premium, and reasonable care requires that they address this problem to assure that the problem is corrected. By taking no action in response to the first Allstate notice, the Haggertys contributed to create the situation they are now complaining about. The evidence of the other parties' negligence is far less certain. Yet the evidence now in the record is insufficient to establish that Hart is free of contributory fault as a matter of law.

The two Allstate notices went not only to the Haggertys, but also to the Hart agency. Thus the Hart agency had the same information the Haggertys had, and, as an insurance professional, Hart would be more likely to realize the urgent nature of both notices. Hart's duty of reasonable care may require that he also take some action in response to these notices, whether that action is a telephone call to the Haggertys, an

inquiry to Countrywide, or some other action.  The same duty of reasonable care that applies to the Haggertys also applies to Hart, i.e. the duty to take reasonable actions in the particular circumstances that confront them.  Here both Hart and the Haggertys were on notice that there was a problem with the Haggertys' SFIP premium, and this knowledge may well require that both of them take appropriate action to address the problem.

Plaintiffs assert that they made their request for additional windstorm coverage in late 2004.  This request came several months after Hart sold his agency to Dean, and I do believe that Hart is entitled to summary judgment with respect to the Haggertys' claim for failure to secure the increased windstorm coverage the plaintiffs say they requested for policy year 2004 - 2005.

Hart's agency not only sold the Haggertys their original insurance coverages, but also handled the annual renewal of these policies from 1999 to 2003.  As long as Hart was acting as the insurance agent for the Haggertys, Hart owed them a duty of reasonable care.  This duty may, in my opinion, require that an agent respond to a notice from the underwriter at the time the policy is up for renewal that his clients' coverage limits are being reduced based on the underpayment of an annual premium.  On the basis of the record before me, I cannot say, as a matter of law, that Hart properly met the duty he owed to the Haggertys before he ceased to act as their insurance agent on January 1, 2004.

An appropriate order will be entered.

**DECIDED** this 7th day of July, 2008.

                                            s/ L. T. Senter, Jr.
                                            L. T. SENTER, JR.
                                            SENIOR JUDGE